May it please the court, I'm Greg Silvia, I represent the petitioner Jack Cook. I'll let amicus introduce themselves I guess right now so the court knows who everyone is and he'll be arguing. Well you have a very interesting case to you today. I'm going to focus on, this has been well briefed, the court's exceptionally well prepared about its cases. So I'm just going to get right to what I think the heart of the problem in this case is and I'll let everyone else talk about what they want to talk about. But the bane of Mr. Cook's existence in this case has been the burden. A burden was placed on him which no one will explain what it is and everybody says that he didn't need it and no one will explain why he didn't need it. In my briefing I complain about this, nobody ever wants to respond, so I'm just going to lead with that. And this is a criminal case. As we all know criminal defendants don't have to prove their innocence, but yet that is what it absolutely appears that was required of Mr. Cook in this case. We have the courts in the state, the state appellate court, and then this is picked up by the federal district court. They're saying that based on civil cases or First Amendment cases or void for vagueness cases that Mr. Cook has a burden here to prove the statute unconstitutional to him. Well I submit that the burden is actually on the state to at some point somehow prove beyond a reasonable doubt or get And it's just simply not there. It is not in the charging document and as I briefed in my reply contrary to the state's assertion, Mr. Cook did not try to strike a consent or lack of consent element because that just left him completely and utterly defenseless in this case. It just becomes a strict liability crime if you've admitted to the conduct and you don't get to raise lack of consent or the state doesn't have to prove it. Well there were sort of two things that the Court of Appeals focused on. One was the lack of consent and the other was that it was not in a private place, both of which are mentioned in Lawrence and either of which might have been sufficient. So even if you have consenting adults and we don't have a problem with somebody with Down syndrome, if it's done in a public place the state may have a right to regulate it. And Mr. Cook did state on the record and it was also stated in the briefing so that everybody was aware of it, that this was done in a club, in a sauna. Which he said is a private club that requires a membership and so that's not a public place. Well that was his argument. But the Idaho Court of Appeals said that it was not a private place. It was not the same as doing it in the home, that this was a public place. And on that point I just don't see that we have a And it seems to me that that is not something that the Supreme Court has undertaken to define for all times and all places. Well early on in Lawrence, early on in Lawrence the court speaks I mean very, I guess would be kind of flowery language about what the real right here is and certainly it's not a spatial right. It was, it talks about it, it's almost a right of the spirit. It's a right of freedom and I'm sorry I didn't bring Lawrence up here with me. But it's at the beginning of the opinion and I think I cite to the page in one of my briefs about Lawrence saying that they certainly, you know there's nothing in Lawrence that's limiting basically the right to engage in anal or oral sex to one's home. And I think that all I can do is Right, but it does say that you can't do it to somebody without consent and you can't do it in a public place. At least it suggests that those are limitations that the state may have. Now if Idaho thinks that a sauna in a club that requires a membership, a gym, is nevertheless a public place not covered by that, what Supreme Court case tells us that Idaho is wrong on that? We're here on EDPA review. You didn't take direct review to the Supreme Court. You could have argued this, you know, de novo in the Supreme Court. We're not here. We've got to, we have to defer to the Idaho Court of Appeals. And what Supreme Court authority tells us that Idaho got that wrong? It's Lawrence still says it got it wrong because what Lawrence... I don't, but Lawrence doesn't say one word about gyms. Well, but Lawrence... Or saunas. What Lawrence actually does is it strikes down a statute with the sole substantive element is oral or anal sex. That is, for all practical purposes, the Idaho statute. I've produced the jury instruction. I mean, there's one element, you know, did this happen? So it is my position that if the state is going to, the state can't use a statute with a sole element like that, and if it believes that other factors to the case brings it outside the protection of Lawrence, we need to have a jury instruction. The jury gets to decide, is our two by the way, both went into the sauna naked. So, I mean, there was an expectation of privacy to some extent in the sauna. I mean, they weren't out on the sidewalk. They weren't up in the big window where you ride the bike. Yeah, one of them has down syndrome. But they were both there. Nevertheless, they both went into a sauna naked, which I would assume is the locker room of a gym that requires a membership to be in. Maybe that's public. Maybe it isn't. But a jury gets to decide that. If maybe it is and maybe it isn't, then isn't that for Idaho to decide for itself? And unless the Supreme Court tells us that the Constitution compels a different judgment, what right do we have under AEDPA to overturn Idaho's judgment as to what's public and what's not? So I still stick with Lawrence because you have to remember, privacy, the public component, that was never, that was not even a theoretical charge in that. It wasn't one that was charged and struck. We still have a charging document, the sole element of which is the performance of oral sex. We've run you a little bit over your time, but one quick question. Mr. Cook asked the trial court to supplement the record to reflect that this was a private membership-only club. Correct. Did the court accept that? I think it did. I mean, there's no indication to me that the court didn't. I don't really remember what the court said, I guess. But I mean, the court didn't reject the notion. It didn't make a ruling based on it. It didn't say that doesn't matter or that makes this not a crime. I thought the court said, well, the record is the record and basically said, no, I'm not going to amend the charge or amend the record in any way. I don't recall that, but I guess one of the benefits of having a table full of lawyers with me is when a table full of records that I bet I can know that by my rebuttal. If I have a second left, I'll answer that question. Sure. Why don't we hear from Amiki then? Thank you, Your Honor. May it please the court to address the questions that the two of you have had about the public nature. Just to reiterate, this has never been charged as a public sex act. That was never an element of the offense specified in the information. Cook certainly never pled guilty to that fact, and he specifically contested it. Judge Hawkins, to answer your question, after Mr. Cook asked the court to make a stipulation that the place where it occurred is a private club, the court said, and specifically Mr. Cook said, under the definition of the Idaho state law, that's considered a private club. The court said, okay, I appreciate that, and that's presumably an issue that would be part of the appeal process. I think there's a record, a factual record of where this took place. That's on page 145 of the excerpts of record. Bringing it back to the bigger picture, whether this was a public place is a question of fact for a jury to make a determination on. We've got a guilty plea. How do we deal with that here? We're here on AEDPA, so we've got two problems. Supreme Court case law clearly establishes that a guilty plea is only a plea to the elements that are charged in the charging instrument. That's McCarthy versus United States. Mr. Cook specifically contested all of the other factual allegations which were never charged in the charging instrument. The only elements of the offense to which he pleaded guilty were that he committed oral to genital contact with another person. After Lawrence, it's clearly established that that doesn't constitute any sort of offense. The state was under an obligation to prove, beyond a reasonable doubt, some fact that took the challenge conduct outside the scope of the constitutional protections that were clearly established in Lawrence. And there's no dispute that the state never did that beyond a reasonable doubt. Couldn't Lawrence simply say that the state couldn't legislate as to this type of activity if it were A, consensual, and B, in private? That was part of Lawrence, wasn't it? Well, Your Honor, I think the holding of Lawrence was that the criminal prosecutions in that case violated due process because they sought to punish conduct that was consensual and in private. Right. So I think Lawrence... Implicitly, if it was neither private nor consensual, criminal punishment could be visited. Exactly. And I think the point here is that... Didn't he admit that it wasn't private? No, Your Honor, I think... He claimed that it was private, but that's a legal question based on Idaho law. I... So if Idaho says it's private or public... Well... And per review, what can we do with that? I apologize for interrupting. Just to make two points. First, he never admitted that it was public. He admitted the location where it occurred, but he maintained that it was private. And second, under Idaho law, whether conduct... Or under the law generally, whether conduct is private or public is a fact-specific determination for a jury to make. In fact, there's clear Idaho law that in state versus limber hands, a gentleman was caught committing a sex act in a bathroom with a four-inch hole in it in a public place, and that was determined to be private. So this is a question that should have gone to the jury. And that's the primary contention here entirely, that the state charged Mr. Cook with an offense reciting only the statutory elements which, as a matter of law, do not establish a crime that is within the state's power to convict a defendant of. Your problem isn't really Lawrence, is it? I mean, this decision is not contrary to Lawrence. But the trial judge probably misstated Lawrence. The Idaho Court of Appeals looks like it got it right. I mean, your real problem is Apprendi. It's not really... The Idaho decision is not contrary to Lawrence. I think, Your Honor, that... It might be contrary to something else, but it certainly isn't Lawrence. Respectfully, Your Honor, I think Lawrence has to be read a little bit more broadly than that. Lawrence is a due process case about the circumstances under which the state can prosecute a defendant for sexual conduct. Lawrence establishes that those prosecutions are only constitutional when the state has put to its proof of some fact that brings it outside of the adult, consensual, private conduct. Here, the state has never been put to any sort of proof that this conduct was either private or consensual. I think that that is a... But could Idaho decide as a matter of law that a gym requiring a membership, a golds gym or the athletic club or whatever it is, is nevertheless a public place for purposes of the anti-lewd and lascivious conduct statutes? Well, first off, that's not the case here. And just to answer your question, I think that whether some... Whether conduct is public or private turns on whether there's a reasonable expectation of privacy, and that is a fact-specific inquiry. I don't think that you can... But if... Could Idaho... If Idaho said, if you belong to a club where people may go generally, but let's suppose that Idaho said, if you have more than 50 members that belong there, then it's not private conduct, even if you do it in a sauna. And there's just the two of you there. It's a hard hypothetical. I'm not sure I can answer it. It is possible that the state could, but in this case, I think the important... But what... If Idaho reached that judgment, what Supreme Court case should tell Idaho that the judgment is wrong? I don't think that's the issue here, because the issue is what conduct was charged. I mean, the purpose of a charge and the purpose of a guilty plea is for the defendant to acknowledge his criminal conduct in relation to the charged conduct by the state. If Cook were charged with a public sex offense, and the state came in and said, as a matter of law, this was done in public because of all the reasons you just established as being behind the Idaho statute, then Mr. Cook can make an informed decision about whether to plead guilty because he had some defense or other to the crime. But here, we're only talking about the bare elements of the offense. We're talking about oral to genital conduct with another person, which under Lawrence, it's clearly established that that can't constitute a constitutional offense. I say that, I've taken a minute over my time of Mr. Silvey's time, so if the court has no further questions. Thanks. Thank you. We'll hear from the state. Good morning. Thank you. May it please the court, my name is Jessica Lorello and I represent the respondent. Could the state have charged Mr. Cook with this act and included in the charge, A, that the other person was incapable of giving consent, and B, that it occurred in a public place? Yes, I think the state absolutely could do that. Why didn't they? It did do that, and that was in the charging document, and it is Mr. Cook, and it's one of the things I wanted to mention, it is Mr. Cook that struck that from the charging document. He said, I won't plead guilt to that, and the trial court, with the cooperation of the prosecution, narrowed the charge to the charge that we have in the record now, which says nothing about consent and nothing about this occurring in a public place, correct? Well, I would Am I correct in what I just said? Yes, except with the state's cooperation, the state did it pursuant to the court's order. However it happened, when the charge was put before Mr. Cook, and he responded with this plea of guilty, the charge said nothing about lack of consent and nothing about the offense occurring in a public place. Am I correct? That is correct. Okay. At the time of what are we entitled to look to under AEDPA review to determine either that there was not consent or that it occurred in a public place? Well, I think my response is twofold. The first is, there's nothing in Supreme Court precedent under AEDPA review that would prevent the Idaho Court of Appeals from looking at the record in the case, but one of the greater points, and the point I wanted to really make today, because I don't think I made it in my brief, and that is, when Mr. Cook pled guilty, the issue he preserved for appeal was the district court's order denying his motion to dismiss. And when counsel for Mr. Cook says the burden has never been made clear to Mr. Cook, that is absolutely not true. His burden is clearly, when he is challenging the constitutionality of a statute as applied to his conduct, it is his burden at that time to establish that the state is prosecuting for him for something that it cannot do so in accordance with the constitution. So what happens at his guilty plea, and what he says at his guilty plea, frankly, does not inform that question. What all that matters is, at the time Mr. Cook filed his motion to dismiss, what evidence did he present that the state was prosecuting him for something that would violate the constitution? And he presented nothing at that time. And your position is that's his burden? That is his burden. When he is making that challenge to that, being prosecuted under that statute is absolutely his burden at that time. Would you agree that if there was no record, in this case, of any kind, other than the charge, defense, and Cook pleading guilty, that we would be right within the territory of Lawrence? I think that's difficult only because, Your Honor, of the way the statute is written. And it doesn't even explain it. Forget the statute. This is a hypothetical. This case, but no record whatsoever. The charge in this case, oral to genital conduct on another person, and the defendant saying, I plead guilty, and there's nothing in the record whatsoever. Would you agree, in that hypothetical case, that Lawrence would control? In that hypothetical, yes, where it just says oral genital contact and nothing else. So we have to look to something else in this particular case. And what is it that we look to? In this case, I think you look to, because it's a challenge made at the time of the motion to dismiss, you look to what was presented at that time to show why the charge against him was unconstitutional as applied to him at that time when he made the motion to dismiss. Because that is the question that was on review to the Idaho Court of Appeals. And so it was, there was nothing in the Constitution or the Supreme Court, frankly, the Idaho Court of Appeals even noted that a number of states have held that you waive an as-applied challenge by pleading guilty. It didn't apply that to Mr. Cook. And so it looked at the record in the case. And it frankly gave him a benefit of looking beyond even what he presented as evidence. But... So if I follow what you're telling me, another hypothetical, imagine a couple, both consenting adults, out for the evening, have a drink or two, and they're in a ballroom or whatever, and they go into a closet and close the door and have sex. Is that a public place? What, under Idaho law or just for me? Under Idaho law. I mean, I don't know because I don't know that Idaho law has addressed that issue. I would certainly argue on behalf of the state that it's not a public place. Even under Lawrence, I don't think it's a public place. Lawrence talked about somebody's home. That, those were the facts. You think Lawrence is restricted to the home? I think Lawrence is restricted to consensual sexual relationships on its facts, certainly in the home. So what did the Idaho Court of Appeals look to to establish either that there was no consent here or that this occurred in a public place? What did they look to? They looked to, and can I just back up one quick minute? Because I don't want to go too far on the home thing, because I think if it was a hotel room, I think there's certain analogous stuff. So I want to say that. But what the Court of Appeals looked to was the pleading filed by the state in response to Mr. Cook's motion to dismiss, and it looked to the factual basis presented at the time of his guilty plea. And you're talking about the factual basis. The court required that a factual basis be established that the crime had committed, which is normal in any guilty plea. Detective Struck, maybe I mispronounced his name, maybe Struck, testified that Mr. T.F. had Down syndrome. Mr. Cook was in the courtroom. He and his attorneys made no objection to that. Is that evidence we can look to as an adoptive admission of Mr. Cook that T.F. did have Down syndrome? Well, I think, and I'd like to incorporate an additional response to Judge Hawkins' question, I think, in terms of what was before the, I want to note that the court, what I recited in terms of what the court looked at is what's in their opinion. There was other stuff in the record, including the PSI, in terms of the information the court had about consent, and the PSI is not included in the record. I don't want to step on Judge Bea's question, but you're, sorry, you're saying that a reviewing court in Idaho can look to anything in the record, hearsay, double hearsay, triple hearsay, innuendo, whatever. If it's, if there's something in the record, the court can look to it. Well, what I'm saying is there's nothing in the United States Supreme Court under AEDPA that would prevent them from doing that. Okay. And on the adoptive admission, I hope I remember your question correctly, Judge Bea, the adoptive admission by Cook that the- Here's what I have in mind. The judge says, give me a factual basis. Usually, it's done by the prosecutors making a proffer of evidence. Usually, it's done by saying, do you stipulate, counsel, that that's a sufficient factual basis, right? Here, there was not, there was no stipulation requested. But nonetheless, defendant, Detective Strook, testified that T.F. had Down syndrome. That goes to the issue of consent. Was he able to consent? No. Defendant made no objection to the detective's recitation of that. Does that constitute an adoptive admission by the defendant of what the detective had to say? Well, I don't think, I don't think the detective testified. I think the state just presented what his testimony would be. That's right. The representation of what he would testify. And he, I think that he, and he never took issue with that. So, my question is, does that constitute an adoptive admission for purposes of Booker that it is an admission of the defendant? I think it does. And there's certainly other evidence in the record, including the PSI, primarily, that Mr. Cook knew that the victim had Down syndrome. You're talking about the PSI, the pre-sentencing report? Yes, I'm sorry, the pre-sentence report. And it's not in the excerpts of the record, but it was in the lodging filed with the district court. Is a person with Down syndrome incapable of giving consent? Not necessarily, but the information, again, in the PSI, clearly reveals the limitations on this specific individual's ability to consent. The fact that he did not consent, that he told Mr. Cook no. And when he was asked why he didn't push him away, he said, because I obey adults, why didn't you hit him? Because I'm not allowed to hit people or I will get kicked out of the gym. So, there was certainly evidence contained in the record, which the Court of Appeals could have easily considered, although not specifically referenced in their opinion on that particular point. And that was in the PSR? I'm sorry, the pre-sentence report, yeah. And it's probably referred to in some of the pleadings, it's the PSI. Back to my hypothetical of just this charge and a guilty plea and nothing in the record. And after entering the plea, the defendant moves under a rule of procedure to dismiss the case. And a judge says, I'm not going to dismiss this case because it's your burden to establish that this case is not within Lawrence. That would be okay? Because he's making an as-applied challenge, yes, Your Honor. He's not making a facial challenge here. He's making an as-applied challenge. So, I think that necessarily requires looking at the specific facts of the case. If you're just looking at a pleading based upon the statute, that seems to me a facial challenge. And that is not what he made. You know, one of the problems we get, pleads all the time and have to look at them. And we would love it if judges doing sentencing would say to a defendant, tell me what you did in your own words. And when that happens, a lot of the problems that we see in these cases goes away. I don't know why they don't do that more. I would love it too, Your Honor. I would make me in a better position much of the time. So, and I don't know why either. But perhaps it's worth noting that the court asked Mr. Cook at the change of plea why he was admitting it. And he said, well, I really didn't expect you to answer that, expect you to answer, to ask me that question. So then the court at that time kind of discussed it more in detail and moved almost directly to the state's offer of proof. But again, I really step back and think it's important to look at really the procedural posture of this case. And his challenge on appeal was, did the district court err in denying my motion to dismiss? And so I know that he wants to emphasize all this stuff he said at the time he changed his plea, including that he said at that time, I'd just like to note that this was a private club that requires a membership. Frankly, I just don't see how that pertains to the actual issue preserved for appeal. That was the error in denying the motion to dismiss, where it was his burden to show that the statute was unconstitutional as applied to his conduct. And he did not establish that. And frankly, his entire argument in relation to the motion to dismiss was really a legal one. And frankly, it was a legal one that was contrary to what the state court of appeals had held. His argument was, there's nothing in here that provides that consent is a defense. Therefore, you can't prosecute me. And the state was trying to say, we acknowledge that. Consent would be a defense. If it was consensual, it would be a defense. And even his argument at the hearing on the motion to dismiss, Mr. Cook's counsel specifically said, if consensual, it's legal. He's the one that took that out of the equation by convincing the trial court that the trial court cannot instruct on consent as a defense or an element or however you want to phrase it. And it seems that the court instead went down the privacy road, as Judge Bybee noted, in deciding against him and did not accept, you know, the stipulation. In fact, he said at that time, I appreciate what you're saying. He said, okay, I appreciate that. And presumably, that's an issue that would be part of the appeal process. In my experience, a stipulation, if someone proposes to stipulate to something, it requires the opposing party to agree. That's not present here. That's not. And the trial court to approve. And that's not present here. That is not present. So all we have is Mr. Cook's asking for a stipulation and it not being granted or agreed to. That's correct. And I think that's consistent with what the trial court, the road the trial court went down, which is rejecting that it was a private relationship, agreeing on the consent point. And so I think that's why he said that's really the issue on appeal that you're going after. So unless the court has additional questions, the state would ask this court to affirm the district court's decision. Thank you. Mr. Silvey, you have some time. So much to say, so little time. I'll start where the state left off, or almost where she left off. The controlling Idaho law is that consent is not an element and that a jury and it cannot just be inserted, judicially inserted into the statute. That was Holden. So I mean, what the state is arguing, basically what should have happened below and what they've argued in their brief, that the court erred by not putting that jury in structure or not having that be an element, it's just completely contrary to what the controlling law. So if consent, we push consent aside, what was wrong with the Idaho Court of Appeals looking to your client's statement to the court about where this occurred? What is wrong with it? Yeah. I guess I don't follow the question. I mean, I guess I don't see anything wrong. If we push consent aside, and we're focusing on what the Idaho Court of Appeals did under the EBPA standard of review, and it looks like what they relied upon was your client's statement about asking for a stipulation. What's wrong with the Idaho Court looking to that as to the location of the event and taking it out of Lawrence? What's wrong with that? Well, there's still no, still a criminal case. There's still not an admission or proof beyond a reasonable doubt that it was not in a private place. I mean, Idaho actually has a statute criminalizing sexual conduct in public places. It's a real crime. They didn't use it. I mean, the entire problem here, male rape is an Idaho crime. They didn't use it. Crimes existed by which these factors we're talking about here are actual elements of the crime. The state refused to use it. And they tried to jam a consent issue into a statute that doesn't have it, in which controlling Idaho case law said, you can't do that. That is, so, I mean, the state had all the ability to charge this correctly, consistently refused to. Could you answer Judge Hawkins' question? Was the court permitted to look at the statement of Mr. Cook as to the location of the act in determining where the location of the act took place? Well, I guess I have two answers. Yes or no? Well, begins with yes, then it goes to, or begins with no, and then it goes to yes. I mean, I believe the state is, or the court of appeals is limited to the charging information and what is admitted in a change of plea hearing. But in terms of, say, your question of the adoptive admission of the saying he has Down syndrome, well, I mean, if that's the case, why didn't the state adoptively? Bea has asked you a very focused question. It's a question I have an interest in the response to, and we'd like to have an answer to it. Okay, well, let me make sure I'm focused. What restricted the Idaho court of appeals from looking to your client's statement about where this occurred vis-a-vis Lawrence? What prohibited them from doing that? What makes that unreasonable under EDPA? Because it was never charged. It was not an element of the crime. It was not material to the charged crime. But if the state had put its factual basis before the court, and I understand this didn't happen here, and Cook had said, yes, I agree, that's what happened, and I plead guilty to the charge, would that have been enough? Yes, that would be, I mean, it's apprendi is what we're talking. It's what's proven beyond a reasonable doubt or admitted by the defendant are correctly established facts. So, yes, I agree. So that's where I guess I'm, that's where I was not trying to be dodgy about answering the question. So what you're saying is that unless the prosecution proffers evidence and the defendant admits and accepts the prosecution proffer of evidence, a statement made by the defendant in the plea colloquy as to a fact cannot be acknowledged and used by the court of appeal. I don't mean this to sound the way that it's going to sound, but... Why don't you just say yes or no? I think that they could have used it to reverse the conviction but not affirm the conviction. As, I mean, this is a, I mean, he was using that as a defense of why I didn't commit the crime, so... But if he blunders into the truth, can't it be used? Well, yeah, if he would have blundered into, if he would have said and it wasn't consensual... He has his own idea of what is private and what is public, but he does admit where it occurred. Correct. It may be a question of Idaho law whether the location is public and private. Once he's admitted the act, the question shifts from a factual investigation to a legal investigation. I don't believe the court of appeals ever made the legal determination. Their comment is just, there's more than ample evidence of whatever, whatever, whatever. I mean, there was no law, legal analysis of that situation. But I guess what I'm coming, what I've been trying to say about this is, you know, what's good for the goose is good for the gander. If this is being held against them, why hasn't the state adopted the admission by the detective that he thought it was constitutional? Why didn't that meet his burden of saying, consent is at issue in this case. We have to, we have to have a crime where consent can be considered, or privacy, because again, that's a crime as well. When we're, when issues are being raised to the court, I mean, it just seems they're being held against them. Why isn't that meeting whatever the burden he has? I mean, it appears that he is supposed to prove beyond a reasonable doubt that he didn't commit the crime if elements were in the crime, which aren't really there. I mean, the state actually, Mr. Silby, you may want to wrap up. You were well over your time. Sorry. I, sorry about that. I, the one, one thing I'll say without belaboring it is, the PSI is in the, the pre-sentence investigation report is in the record, and there are two sides to this story. This is not a case where they're just going to bear, make the state prove beyond a reasonable doubt. There's a whole other version of events of what happened here. So with that, I will sit down. Thank you very much. We thank all counsel for the argument for the briefing in this case, and Cook is submitted.
judges: Hawkins, Bybee, Bea